OPINION
Defendant-appellant Terry Lehman appeals from the February 16, 2001, Judgment Entry of Sentence issued by the Fairfield County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
In December of 1997, appellant Terry Lehman, who was employed by a temporary service, began acting as a caretaker for Bernice Mace, who was in her eighties. During the period from January 24, 1998, through April 16, 1999, a total of $95,752.00 was withdrawn from Mace's bank account in twenty two separate withdrawals. While the largest withdrawal was in the amount of $12,000.00, the remaining withdrawals were in amounts ranging from $100.00 to $10,000.00.
After Mace's nephew, Charles Johnson, discovered that the money was missing from her account, appellant was questioned by Detective Dan Shupp of the Lancaster Police Department. Appellant admitted to Shupp that she had accepted $21,300.00 from Mace and subsequently also told Shupp that "it was a good possibility she had gotten all of it, she just didn't know." Transcript of Sentencing hearing at 17. By comparing Mace's bank records with appellant's employee records from the temporary service, Shupp was able to determine that appellant had taken Mace to the bank on all but one of the dates in question.
Subsequently, on April 28, 2000, the Fairfield County Grand Jury indicted appellant on one count of theft from an elderly person or disabled adult in violation of R.C. 2913.02, a felony of the second degree. The indictment specifically alleged that appellant had taken approximately $95,000.00 from Mace. At her arraignment on May 4, 2000, appellant entered a plea of not guilty to the charge.
Thereafter, on October 13, 2000, appellant withdrew her former not guilty plea and pleaded no contest to grand theft, a felony of the fourth degree, in an amount over $5,000.00 but less than $100,000.00 in violation of R.C. 2913.02. The trial court then found appellant guilty of the charge. Following a sentencing hearing held on December 11, 2000, the trial court sentenced appellant to fifteen months in prison and ordered appellant to make restitution in the amount of $94,752.00 to Mace. The trial court, at the sentencing hearing, also denied appellant's request for community control and ordered her to pay a fine in the amount of $250.00.
On December 13, 2000, prior to the journalization of the sentence, appellant filed a Motion for Post-Conviction Relief or in the Alternative to Reconsider Sentencing, seeking an order from the court granting her request for community control sanctions. Appellant, in her motion, stated that she was requesting relief "because she believes that the Court made an error of law when it refused to comply with R.C. 2929.13(B)(2) when it denied her Application for Community Control. . ." As memorialized in a Memorandum of Decision filed on January 10, 2001, the trial court denied appellant's motion. Thereafter, a Judgment Entry of Sentence was filed on February 16, 2001.
It is from the trial court's February 16, 2001, Judgment Entry of Sentence that appellant now prosecutes her appeal, raising the following assignments of error:
 I. THE TRIAL COURT COMMITTED ERROR WHEN IT SENTENCED THE DEFENDANT TO A TERM OF ACTUAL INCARCERATION FOR A FOURTH DEGREE FELONY IN VIOLATION OF R.C. 2929.13(B)(2) WHERE THERE WAS NO FINDING THAT THE DEFENDANT WAS NOT AMENABLE TO COMMUNITY CONTROL SANCTIONS.
 II. THE TRIAL COURT COMMITTED ERROR IN ITS REFUSAL TO GRANT THE DEFENDANT'S REQUEST TO BE PLACED ON COMMUNITY CONTROL AND DEFENDANT'S MOTION FOR POST CONVICTION RELIEF AFTER EXPLICITLY FINDING THAT THE DEFENDANT COULD BE AMENABLE TO AVAILABLE COMMUNITY [SIC] CONTROL SANCTIONS.
 III. THE TRIAL COURT COMMITTED ERROR WHEN IT SENTENCED THE DEFENDANT TO A TERM OF ACTUAL INCARCERATION IN EXCESS OF THE MINIMUM SENTENCE IN VIOLATION OF R.C. 2929.14.
 IV. THE TRIAL COURT COMMITTED ERROR IN FINDING THAT THE DEFENDANT WAS LIABLE TO RE-PAY $94,752.00 IN RESTITUTION WHERE NO MORE THAN $21,300 OF THE INTER VIVOS GIFTS GIVEN BY MS. MACE TO MRS. LEHMAN WERE DEMONSTRATED BY ANY COMPETENT EVIDENCE.
 V. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT MS. MACE SUFFERED [SIC] PHYSICAL OR MENTAL HARM IN THE ABSENCE OF ANY EVIDENCE WHATSOEVER THAT MS. MACE SUFFERED ANY HARM WHATSOEVER AS A RESULT OF HER INTERVIVOS GIFTS OF CASH TO THE DEFENDANT.
 VI. THE TRIAL COURT COMMITTED ERROR WHEN [SIC] IT FOUND THAT THE INTER VIVOS GIFTS OF A COMPETENT MS. MACE CAUSED HER TO SUFFER SERIOUS ECONOMIC HARM WHERE THE COURT WAS PRESENTED WITH ABSOLUTELY NO EVIDENCE THAT MS. MACE'S ACTIONS HARMED HER IN ANY FORM OR FASHION.
 VII. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE DEFENDANT HELD A POSITION OF TRUST AS THAT TERM IS CONTEMPLATED [SIC] IN THE SENTENCE STATUTE.
 VIII. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE DEFENDANT'S ACTIONS WERE LIKELY TO INFLUENCE THE FUTURE CONDUCT OF OTHERS.
 Standard of Review
R.C. 2953.08 directs this court to modify or vacate a sentence if we clearly and convincingly find that the record does not support the sentence or if it is contrary to law. It is pursuant to this Standard of Review that we consider appellant's assignments of error.
 I, II
Appellant, in her first assignment of error, contends that the trial court erred in sentencing appellant to prison for a fourth degree felony in violation of R.C. 2929.13(B)(2) when the trial court never found that appellant was not amenable to community control. In her second assignment of error, appellant argues that appellant's request to be placed on community control should have been granted since the trial court found that appellant could be amenable to community control sanctions.
R.C. 2929.13 provides guidance in sentencing according to the degree of the felony. Section (B)(1) of this statute addresses fourth and fifth degree felonies. Under this section of the statute, a trial court is required to determine whether any of the following factors apply:
 (a) In committing the offense, the offender caused physical harm to a person.
 (b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 (c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 (d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
 (e) The offender committed the offense for hire or as part of an organized criminal activity.
 (f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31, 2907.321, 2907.322, 2907.323, or 2907.34 of the Revised Code.
(g) The offender previously served a prison term.
 (h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
 (i) The offender committed the offense while in possession of a firearm.
If the trial court finds one of the factors set forth above applicable, the court may mandate a prison sentence upon further findings pursuant to R.C. 2929.13(B)(2)(a). This section of the statute provides:
 If the court makes a finding described in division (B)(1)(a), (b), (c), (d), (e), (f), (g), (h) or (i) of this section and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.
(Emphasis added.)
In the case sub judice, both on the record and in its February 16, 2001, Sentencing Entry the trial court found that appellant held a position of trust and that the offense related to such position. See R.C.2929.13(B)(1)(d).[1] The trial court, therefore, found that one of the factors under R.C. 2929.13(B)(1) was present. However, in addition to finding that one of the factors applied, the trial court must also determine, under R.C. 2929.13(B)(2)(a), that after considering the factors in R.C. 2929.12, a prison term is consistent with the purposes and principles of sentencing set forth in R.C. 2929.11 and the offender is not amenable to community control.
Appellant, in her first assignment, does not dispute that the trial court considered the factors set forth in R.C. 2929.12 in sentencing appellant. Rather, appellant contends that the trial court failed to find that appellant was not amenable to community control. At the sentencing hearing, the trial court specifically overruled appellant's application for community control, stating on the record as follows: "The Court would overrule the application for community control, because to do so, in the Court's view, would demean the seriousness of the offense and not adequately punish the Defendant and would not fulfill the purposes of 2929.11 of the Ohio revised Code." Transcript of December 11, 2000, hearing at 43. By overruling appellant's application for community control, the trial court implicitly found that appellant was not amenable to community control. Furthermore, the trial court, in its February 16, 2001, Judgment Entry of Sentence, explicitly stated that "[f]or the reasons stated on the record, and after consideration of the factors under Revised Code § 2929.12, the Court also finds that, prison is consistent with the purposes of Revised Code § 2929.11 and theDefendant is not amenable to available community control sanction."
(Emphasis added.) Thus, contrary to appellant's assertion, the trial court did find that appellant was not amenable to community control sanctions. A trial court speaks through its journal entries. State v.King (1994), 70 Ohio St.3d 158, 162. We find, therefore, that the trial court properly followed the statutory requirements contained in R.C.2929.13(B) when it imposed prison time as appellant's punishment to a fourth degree felony rather than a community control sanction.
Appellant's first and second assignments of error are, therefore, overruled.
 III
Appellant, in her third assignment of error, argues that the trial court erred when it failed to impose the minimum prison term upon appellant when she was convicted of a felony of the fourth degree and had not previously served a prison term. We disagree.
R.C. 2929.14 states, in relevant part, as follows:
. . .
 (B) [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
In interpreting this requirement, the Supreme Court of Ohio has held that:
 R.C. 2929.14(B) does not require that the trial court give its reasons for its findings that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence.
State v. Edmonson (1999), 86 Ohio St.3d 324, syllabus. Furthermore, "the record of the sentencing hearing must reflect that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence." Id. at 326.
In the case sub judice, the record reflects that, at the sentencing hearing, the trial court found as follows:
 The Court would further find that the shortest prison term alone would demean the seriousness of the offense and not adequately protect the public, because if you go back to the general purposes, it's to punish offenders and protect the public from future crime. And part of that is deterrence. And this is a particularly important one in this case of a care-giver taking large sums of money from a patient who is incompetent. Also, we have to consider the issue of restitution in this case.
Transcript of December 11, 2000, hearing at 42.
The trial court made a specific finding on the record the shortest prison term would demean the seriousness of the offense and would not adequately protect the public. The court then supported this finding with reasons. Because we find that the trial court's decision was supported by the record, we find no error in the trial court's decision to impose a sentence greater than the minimum.
Appellant's third assignment of error is, therefore, overruled.
 IV
Appellant, in her fourth assignment of error, challenges the trial court's order directing appellant to pay $94,752.00 in restitution to Mace. Appellant specifically contends that "[i]n the absence of a scintilla of evidence that Mrs. Lehman [appellant] received any more than $21,300.00 . . . from Ms. Mace, the Court's Order that she pay restitution in the amount of $94,752.00 was an abuse of discretion that must be reversed."
A trial court is authorized to order restitution by an offender to a victim or any survivor of the victim, in an amount based upon the victim's economic loss. R.C. 2929.18(A)(1). The trial court is to determine the amount of restitution at the sentencing hearing. Id. The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty. State v. Gears (1999),135 Ohio App.3d 297, 300.
At the sentencing hearing, Detective Shupp of the Lancaster Police Department testified that, based upon his investigation, he determined that a total of $95,752.00 had been taken from Mace's account during 22 separate bank withdrawals. By comparing appellant's work records from the temporary service with Mace's bank records, Detective Shupp was able to determine that appellant was Mace's caretaker on all but one of the days when the withdrawals were made. A summary of the cash withdrawals prepared by Detective Shupp was admitted at the hearing as appellee's Exhibit 1. When asked at the sentencing hearing whether he had discussed with appellant the total amount of money taken from Mace's account, Detective Shupp testified as follows:
A. Yes.
Q. And did she have any accurate record?
 A. She provided me with a small tablet which indicated on it the amount that she stated she had taken. I believe she had basically told me that when she would accept money from Bernice, that she would go home and then write down that amount, because she intended to pay it back. If I remember correctly, I believe that the amount on the tablet was $21,300.
 Q. Did you also talk to her about whether the amount could have been more?
A. Yes.
Q. And what did she say?
 A. When I talked to her during the last statement, which would have been, I believe, April of this year, she stated that it was a good possibility
that she had taken it all, but she just didn't realize it.
Transcript of December 11, 2000, hearing at 12 (Emphasis added). Furthermore, both Detective Shupp and Charles Johnson, Mace's nephew, testified at the hearing that there were no other suspects.
Based on the foregoing, we find that the trial court did not err in ordering appellant to pay $94,752.00 in restitution.[2] We find that there was competent, credible evidence in the record from which the trial court could discern the amount of the restitution to a reasonable degree of certainty.
Appellant's fourth assignment of error is, therefore, overruled.
 V, VI
Appellant, in her fifth and sixth assignments of error, asserts that the trial court erred in finding, in its February 16, 2001, Judgment Entry of Sentence, that Mace suffered physical or mental injury and serious economic harm as a result of appellant's actions.
R.C. 2929.12 provides factors to be considered when a trial court determines the seriousness of an offense or the likelihood of recidivism by the offender. In considering whether the offense is more serious than conduct normally constituting the offense, a trial court shall consider the following factors:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 (3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 (6)The offender's relationship with the victim facilitated the offense.
 (7) The offender committed the offense for hire or as a part of an organized criminal activity.
 (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 (9) If the offense is a violation of section 2919.25
or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parent is of one or more of those children. R.C. R.C. 2929.12(B).
A trial court should consider all relevant factors including, but not limited to, those factors listed in R.C. 2929.12. State v. Kalmen (Nov. 15, 2000), Ashland App. No. 00-COA-1348, unreported. However, the weight to be given to the factors in R.C. 2929.12 is within the discretion of the trial court. Id.
As is stated above, the trial court in the case sub judice found R.C.2929.12(B)(1) and (2) applicable. Upon our review of the record, we find that there was competent and credible evidence presented at the sentencing hearing that Mace suffered serious economic harm as a result of appellant's actions and that Mace's mental injury due to appellant's conduct was exacerbated because of Mace's mental condition and age. At the sentencing hearing, testimony was adduced that appellant took a total of $94,752.00 from appellant. Charles Johnson, Mace's nephew, testified that Mace and her husband had a "lifetime of very austere, hard savings" and that, in order to save money, had sacrificed throughout their lives. Transcript of December 11, 2000, hearing at 28. When he was asked how the theft had impacted his aunt, Johnson responded as follows:
A. It's going to have a terrible impact on her.
Q. Why?
 A. I mean, mentally, she's incompetent. Physically, she is not in that bad of health. She could live — I'm not sure how many more years. Daily — you know, trying to keep her in her home as long as I can, having a health provider there every day is very expensive. Her medication, as Ms. Lehman knows, is very, very costly. This whole situation has jeopardized the remaining years of her life.
 Q. And was this money to be used for those types of purposes?
 A. Most definitely. That was the only use. The last thing I had promised my uncle before he had passed away is, you know, if this would ever happen, we would try to keep her in her home for as long as possible instead of putting her in a nursing home. I'm not sure what's going to happen as of now.
Transcript of December 11, 2000, hearing at 30-31. As noted by the trial court at the sentencing hearing, "$95,000.00 is a large sum of money. This person [Mace] is retired, has no way of replacing this money. So the economic harm was very serious." Transcript of December 11, 2000, hearing at 42. Furthermore, Johnson also testified that Mace, who was 86 years old as of the date of the sentencing hearing and had been suffering from severe dementia for approximately seven years, would not receive the same quality of care due to the theft.
Appellant's fifth and sixth assignments of error are, therefore, overruled.
 VII, VIII
Appellant, in her seventh and eighth assignments of error, challenges the trial court's findings that appellant held a position of trust and that appellant's actions were likely to influence the future conduct of others as a result of her position. See R.C. 2929.13(B)(1)(d). According to appellant, "these findings are unfounded in fact and have no basis in law." We disagree.
The record indicates that appellant was a home health care giver for a woman in her eighties who was suffering from dementia when the offenses in question were committed. We find that such a position places a person in a position of trust and facilitated the offense. See State v. Rodgers
(Sept. 24, 2001), Stark Case No. 2000CA00335, unreported. As noted by the trial court: "[t]here was a position of trust here in the fact that she [appellant] was the care-giver for this person, went to her home. Obviously, that was a position of trust. Took her to the bank, filled out the withdrawal slips and took large sums of her money, by her own admission, over $21,000.00 over a period of a little over a year. The bank records indicate $95,000. And on all of these occasions, the moneys were withdrawn, . . . this particular Defendant took the victim to the bank for that purpose, except on one occasion. So the Court would find there was a position of trust here." Transcript of December 11, 2000, hearing at 41. Therefore, we find the record supports the trial court's finding.
We further find that the trial court properly found that appellant's actions were likely to influence the conduct of others as a result of her position. As appellee notes in its brief, "[d]ue to the Appellant's position as an in-home health provider employed by a large agency, if she is not punished with a prison term, her actions are likely to be copied by others in her profession who are exposed to gullible, mentally incompetent people." By sentencing appellant to prison, the trial court sent a clear message to home health care providers that theft from the elderly and/or mentally disabled will not be tolerated.
Appellant's seventh and eighth assignments of error are, therefore, overruled.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Fairfield County Common Pleas Court is affirmed.
Costs to appellant.
Hon. Julie Edwards, P.J. Hon. Sheila Farmer, J. Hon. John Boggins, J. concurs.
[1] Appellant's argument that the trial court erred in finding that appellant occupied a position of trust is addressed below in the discussion of appellant's seventh assignment of error.
[2] The trial court arrived at such figure by deducting $1,000.00, the amount withdrawn on the day when appellant was not appellant's caretaker, from $95,752.00, the total amount withdrawn from Mace's account.